# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHERINE S.,[1]                                    Case No. 1:23-cv-328

        Plaintiff,                              Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


### MEMORANDUM OPINION AND ORDER

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review.[2] The Court affirms the ALJ's finding of non-disability because it is supported by substantial evidence in the record.

## I.  Summary of Administrative Record

On May 26, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB") as well as an application for Supplemental Security Income ("SSI"). (Tr. 15). In both applications, Plaintiff initially alleged that she had been disabled since birth. After her applications were denied at the initial level and on reconsideration, she sought an evidentiary hearing before an administrative law judge ("ALJ"). Just before the hearing, on December 31, 2021, Plaintiff amended her disability onset date to September 30,

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

2019. On January 6, 2022, Plaintiff appeared by video with counsel and gave testimony before ALJ Thuy-Anh Nguyen; a vocational expert ("VE") also testified. (Tr. 36-64).

Plaintiff was 25 years old on her amended alleged disability onset date, and remained in the same "younger individual" age category through the date of the ALJ's decision. She has both high school and college degrees, with past relevant work as a cashier/stocker at UDF, and as a retail clerk at Macy's. (Tr. 20, 28, 42-43, 59). However, she has not worked since her amended alleged disability onset date.[3]

On March 17, 2022, ALJ Nguyen issued an adverse written decision that concluded that Plaintiff was not disabled through the date of her decision. (Tr. 15-30). The ALJ determined that Plaintiff has the following severe impairments: "Ehlers-Danlos syndromes (EDS), fibromyalgia, disorders of the spine, depressive disorder, bipolar depression, anxiety disorder, and attention deficit hyperactivity disorder (ADHD)." (Tr. 17-18). The ALJ also found that Plaintiff has medically determinable but nonsevere impairments of "obesity, migraines, plantar fasciitis, tachycardia, and irritable bowel syndrome (IBS) with constipation." (Tr. 18). Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, meets or medically equals any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 19).

In her decision, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work. Specifically, the ALJ added the following physical and mental limitations:

---

[3]Based on her work history, Plaintiff remained insured for purposes of DIB through December 31, 2019.

2

> she can frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; no concentrated exposure to extreme heat or extreme cold; and no concentrated exposure to unprotected heights; tolerate frequent interaction with the public, coworkers, and supervisors; and no fast pace.

(Tr. 22).  Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff could not perform her past work, but could perform other jobs that exist in significant numbers in the national economy, including the representative unskilled positions of weight recorder, photocopy machine operator, and warehouse checker. (Tr. 28-29). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 29). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred: (1) by determining that Plaintiff could engage in "frequent" interaction with others; (2) by improperly assessing the medical opinion evidence including physical limitations determined during a functional capacity exam administered by a physical therapist; (3) by improperly assessing Plaintiff's subjective complaints; and (4) by failing to include all of Plaintiff's limitations in the hypothetical posed to the vocational expert.   For the convenience of the Court, the undersigned discusses the asserted claims in a different order than presented by Plaintiff.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**

Plaintiff's claims are closely intertwined. Because she heavily relies on subjectively reported complaints to support all of her claims, the Court first considers her contention that the ALJ committed reversible error by discounting those allegations.

**1. The ALJ Properly Evaluated Subjective Complaints Under SSR 16-3p**

Plaintiff's counsel argued at the hearing that Plaintiff is disabled by mental limitations because "she would have a hard time staying on task and…a hard time with criticism if she wasn't staying on task," and by physical pain complaints that preclude repetitive use of her hands and arms and cause postural limitations. (Tr. 41). Plaintiff herself testified that she was unable to work primarily due to pain, and secondarily due to her anxiety and depression. (Tr. 44). Plaintiff attributed most of her pain to her genetic

5

disorder, Ehlers-Danlos syndrome (EDS),[4] and testified that rest and heating pads help relieve her pain. (Tr. 46-47). As for daily activities, she testified that in a typical day if she doesn't have appointments, she likes to make cookies or read and watch TV, but is trying to get out and do more things, including driving 20 minutes to her dad's house daily to spend time with his dog. (Tr. 56-57).

In determining that Plaintiff was not disabled, the ALJ partially discounted her subjective reports. (*See* Tr. 24, concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). An ALJ's analysis of such symptoms is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[5] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony, as the ALJ did in this case, where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies throughout her opinion. Having closely examined the record presented,

---

[4]EDS is a group of inherited disorders that affect connective tissues including skin and blood vessel walls and usually involves overly flexible joints and fragile skin. Mayo Clinic Staff, *Ehlers-Danlos syndrome*, https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125.
[5]SSR 16-3p clarified that in the evaluation of subjective symptoms, the focus is not on the claimant's propensity for truthfulness or character ("credibility"), but rather on the consistency of his or her statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. However, SSR 16-3p did not alter established case law that used the phrase "credibility determination." For that reason, this Court uses the hybrid phrase "credibility/consistency" determination.

the Court finds the ALJ's analysis of Plaintiff's subjective complaints to be substantially supported.

For example, the ALJ discussed the following inconsistencies:

For a period after the amended onset date, the record does not support the severity or frequency of mental symptoms alleged. She did not show much in mental health symptoms, and there is very little mental health treatment in 2020. The record does not show any specialized mental health treatment on any ongoing basis. On September 30, 2019, the claimant reported to her pain psychologist, Mei Wang, Ph.D., that she was depressed but exhausted (6F/14). She reported walking for exercise and was watching movies, spending time with family and friends. Her exam at that time noted she was cooperative, with broad affect, and logical thoughts (6F/15). On October 21, 2019, mental status examination showed she had a flat affect, but she was cooperative, alert, and fully oriented with logical thought process and goal-directed speech (6F/13). At other examinations for physical conditions, medical sources routinely noted she was alert, oriented and had a normal affect and judgment such as one on December 3, 2019.

(Tr. 24).

In contrast to Plaintiff's testimony about her focus and attentional issues, the ALJ reasoned she "is able to write and can drive, she can do chores such as dishes and laundry limited by physical pain, not mental reasons,…has a bachelor's degree…, and reported she had no problem understanding job tasks" when she worked full-time. (Tr. 19-20). In addition, Dr. Sexton noted in November 2020 that she had good understanding, normal speech, average intelligence and organized thoughts, and other clinical examiners noted her to be articulate and able to speak and express herself well. (Tr. 20). Plaintiff also reported that she was working on writing her first book in February 2021, watches movies and bakes for leisure and drives, suggesting "some ability to concentrate, persist, or maintain pace." (*Id.*) Examining and treating clinicians found her to be independent with all activities of daily living, with no deficiencies in hygiene and good eye contact, and that she was cooperative and worked effectively. (Tr. 21). She maintains her own

schedule and arranges her own transportation. (*Id.*) And Plaintiff exhibited only "slight impairment" in attention. (Tr. 20-21). Despite reported difficulty managing work stress, she voluntarily quit work; there was no evidence of poor performance reviews. (Tr. 21).

As discussed below, Plaintiff is particularly critical of the ALJ's finding that she has few limitations in interacting with others. But the ALJ accurately summarized inconsistencies concerning that issue:

> The claimant at the hearing testified that she has problems interacting with others, especially strangers (*testimony*). She further testified to having difficulty handling criticism from supervision; she gave examples of receiving feedback regarding working faster, she gets flustered and frustrated, and she has had crying spells. She noted that she does leave the house daily to go to her father's place, to spend time with his dog. The claimant further testified that she has problem going to places such as the library and has a hard time driving due to anxiety and has problems dealing with people who do not wear masks. She also noted that she would go to the YMCA and swim at the pool but no longer does so due to her anxiety. Otherwise, the claimant reported depression associated with irritability and periods of dissociation, as well as avoidance or isolation (14F/114). However, her mental status exams showed she was cooperative and had normal speech (14F/120, 128, 149). She reported being shy and having hard time making friends. However, treating practitioners did not observe the claimant to have serious deficiencies in eye contact, speech, or conversation. Rarely, if ever, did a source indicate that there were difficulties with demeanor, as the claimant was routinely calm, cooperative, and/or had normal behavior on examination (*e.g.,* 14F/16, 94, 120, 128, 149). Consultative examiner Dr. Sexton in November 2020 noted the claimant has 3 friends (8F). On the other hand, Dr. Sexton also noted the claimant has a history of problems getting along with her classmates in school and with her coworkers, but the claimant did get along with her teachers and supervisors. The evidence is consistent with a finding that the claimant has a moderate limitation in her ability to interact with others.

(Tr. 20; *see also* Tr. 25, noting Plaintiff was able to interact with multiple clinicians on a consistent basis without difficulty). Contrary to Plaintiff's argument before this Court, the ALJ also discussed multiple mental status exams in which Plaintiff exhibited a dysphoric mood. (Tr. 21, 24). Given the existence of substantial evidence that was consistent with

no more than mild or moderate mental limitations, however, the ALJ was not required to fully credit Plaintiff's subjective complaints that her mental limitations are disabling.

Likewise, the Court finds the ALJ's determination that Plaintiff's subjective physical complaints do not preclude all work to be substantially supported. The ALJ discussed multiple objective studies and clinical examination findings that were unremarkable or normal, with few abnormalities noted throughout records dating from October 14, 2019 through October 2021. (Tr. 23-24). As the ALJ concluded, "her exams mostly noted no joint instability, no neurological deficits, no gait problems, no joint swellings, and only some weakness in her knees." (Tr. 24; *see also*, *generally*, Tr. 18, noting Plaintiff's positional tachycardia associated with dizziness had improved with medications, with no exams to support frequency or severity of dizziness/imbalance allegations; Tr. 18-19, noting record did not support functional limitations from migraines). On February 25, 2021, Plaintiff requested a cane to help improve her mobility and was referred for physical and occupational therapy evaluations. But there was no evidence that the cane was medically necessary. (Tr. 24). Plaintiff also reported that her lidocaine patches helped alleviate her pain. (Tr. 23).

Focusing on her diagnosis of fibromyalgia, Plaintiff generally complains that the ALJ erred "in wanting objective findings." (Doc. 7, PageID 1532, citing Tr. 23; *see also id.*, PageID 1535 citing Tr. 26), citing *Rogers v. Comm'r*, 486 F. 3d 234, 242-244 (6th Cir. 2007) and *Preston v. Sec'y*, 854 F.2d 815, 820 (6th Cir. 1988). But in *Rogers* and *Preston*, the ALJs were reluctant to recognize fibromyalgia at Step 2 of the sequential analysis based on the lack of objective abnormalities. Both cases were decided long before the publication of Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, which provides

guidance for the evaluation of fibromyalgia. Here, the ALJ expressly followed SSR 12-2p as well as SSR 16-3p in evaluating Plaintiff's subjective complaints. In the process, the ALJ rejected the opinions of consulting physicians that Plaintiff's fibromyalgia caused so little limitation that it should be classified as nonsevere. (Tr. 25).

But recognizing Plaintiff's fibromyalgia as "severe" did not require the ALJ to find disability. As SSR 12-2p states, "FM is a common syndrome," and most people with that condition suffer from less than disabling limitations. *See Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008). To fully evaluate a claimant's limitations from fibromyalgia, objective evidence must still be considered. SSR 12-2p states that "we must ensure there is sufficient <u>objective evidence</u> to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from perform any substantial gainful activity." *Id.* at *2 (emphasis added); *see also id.* at *3. Here, the ALJ carefully reviewed the longitudinal evidence of Plaintiff's fibromyalgia symptoms as well as the effectiveness of treatment, including lidocaine patches, under the requisite agency guidance.[6] Consistent with that guidance, the ALJ incorporated some of Plaintiff's subjective complaints by limiting her to light work with the avoidance of extreme heat or cold.

Plaintiff complains that the ALJ should have credited <u>more</u> of her testimony, including that she engaged in independent activities only "when able and not in pain or

_____

[6]Consistent with SSR 16-3p, SSR 12-2p states: "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of [FM] symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id* at *5. For the reasons discussed, the ALJ's evaluation of Plaintiff's subjective symptoms reflects no error.

10

not fatigued." (Doc. 7, PageID 1535). She further argues that the ALJ failed to adequately credit her reports that her daily activities include rest and lying down, that she can type or write for only 30 minutes, that she divides chores into parts to complete, (Tr. 47-48, 445, 495), and that she is "tired all the time" (*See* Tr. 860, 1122). But the ALJ fully considered *all* of Plaintiff's subjective complaints. (*See* Tr. 22-23). Plaintiff's suggestion that the ALJ should have given greater weight to her testimony amounts to an improper request to reweigh the evidence. In short, the ALJ's assessment of Plaintiff's subjective complaints falls within a reasonable zone of choice.

In one final cursory argument, Plaintiff asserts that the ALJ erred by failing to consider "chronic pain syndrome." (Doc. 7, PageID 1532). Even if Plaintiff had properly developed this argument, it would provide her no basis for relief. A failure to find a particular impairment to be "severe" does not provide grounds for reversal where the ALJ has found other "severe" impairments and completes the sequential process to evaluate disability. *See Maziarz v. Sec'y of HHS,* 837 F.2d 240, 244 (6th Cir. 1987). And there is nothing in the record here to suggest that the ALJ's consideration of the additional alleged diagnosis would have altered the analysis of subjective complaints.

### 2. The ALJ Properly Evaluated the Opinion Evidence

In a separate claim of error, Plaintiff urges the Court to reverse based on the ALJ's assessment of both physical RFC opinion evidence and mental RFC opinion evidence. Rather than assigning a particular "weight" to each opinion under a previously defined hierarchy of medical opinions, current regulations[7] require the ALJ to determine the

---

[7]Revised regulations apply to claims filed after March 27, 2017. *See generally*, 20 C.F.R. § 404.1520c. The revised regulation eliminates what was formerly known as the "treating source rule."

"persuasiveness" of each prior administrative medical finding or other medical opinion based upon a list of factors, the most important of which are "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2). Supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The ALJ may also consider (but is not required to articulate) additional factors: a medical source's specialization and elements of the relationship the medical source has with the claimant, including the length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship. 20 C.F.R. §404.1520c(c)(3-5).

## A. Physical RFC Opinions

Plaintiff first criticizes the ALJ's review of three physical RFC opinions. The earliest such opinion consists of a Functional Capacity Examination ("FCE") administered close in time to Plaintiff's amended onset date, on October 10, 2019. (Tr. 462-466). The evaluating physical therapist, Cynthia Lear, notes that <u>all</u> of the tests she administered during the 1.25 hour FCE were stopped or "limited by pain."[8] (Tr. 462). In addition to

---

[8]Ms. Lear's report indicates that Plaintiff sat for more than a half hour during the relatively brief exam. Many FCEs are much longer, and include rigorous internal tests (not present here) to measure the examinee's level of effort and/or to indicate reliability and validity. *Contrast, Karen O. v. Comm'r of Soc. Sec.*, No. 1:21-cv-738-SKB, 2022 WL 16745310, at *10 (S.D. Ohio, Nov. 7, 2022) (FCE report generated after two days of testing included multiple indicators of effort and reliability, including measurements of elevated heart rates consistent with subjective report of pain and/or maximum effort).

including extreme lifting and postural limitations, Ms. Lear opines that Plaintiff would be unable to sustain work even at a sedentary level because "[p]ain would likely interfere with her ability to concentrate on work and sustain activity." (Tr. 462). She further states based on her limited exam that Plaintiff can lift only 5 pounds occasionally and can lift 15 pounds rarely. (*Id.*) In addition to Ms. Lear's FCE report, a second physical therapist, Camille Sorrells, reported that Plaintiff has limited activities of daily living.

The ALJ rejected both physical therapists' assessments as "not persuasive." (Tr. 28). The ALJ explained that neither was a medically acceptable source, and that Ms. Lear's FCE report "seems to have [been] largely based on the claimant's subjectively reported limitations." (Tr. 28). Most of Ms. Lear's documented findings such as slowness in movement were based on her observations and Plaintiff's "alleged pains on testing," but notably without "positive exam findings" or correlation of the functional deficits to Plaintiff's impairments. (Tr. 28). The ALJ appropriately explained that the very few objective findings included puffiness on the tops of Plaintiff's feet, Plaintiff's flat affect, and the continuous rubbing her hand on her knee while seated. (*Id.*) Based on concerns about reliability, the ALJ considered the FCE findings only to the extent that they were objectively supported and consistent with the overall record.

The ALJ's analysis is both reasonable and substantially supported. It speaks directly to the issues of consistency and supportability. The ALJ was permitted to discount the FCE report based on her adverse assessment of Plaintiff's subjective pain complaints. *See Tate v. Comm'r of Soc. Sec.*, 467 Fed. Appx. 431, 433-34 (6th Cir. 2012) (ALJ properly discounted a treating source's opinion in part because the opinion was based on claimant's subjective complaints without sufficient support from objective findings).

13

Ms. Lear's report was also inconsistent with physical RFC opinions offered by a consultative agency physician, Dr. Phillip Swedberg. On December 14, 2020, Dr. Swedberg examined Plaintiff and administered a full physical exam that included range of motion testing, as well as muscle and strength testing. During the exam, Plaintiff reported she had been diagnosed with EDS in 2018, following a 2013 diagnosis of fibromyalgia, but expressly denied fainting or dizziness. Unlike during Ms. Lear's FCE, Plaintiff exhibited no difficulties during Dr. Swedberg's tests, and all physical examination findings were "completely normal." (Tr. 838-839). Dr. Swedberg specifically noted that there was "no evidence of hypermobility of her joints or skin elasticity," both hallmarks of EDS. (Tr. 840). However, he noted that given Plaintiff's twelve different prescription medications, polypharmacy could not be ruled out. (*Id.*) Based on his objective exam findings, he opined that Plaintiff "appears capable of performing a moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects," with "no difficulty reaching, grasping, and handling objects," and "no visual and/or communication limitations…[or] environmental limitations." (*Id.*)

The ALJ found Dr. Swedberg's opinions to be "somewhat persuasive." (Tr. 26). The ALJ declined to fully adopt them because Dr. Swedberg was a one-time examiner, and his RFC opinions were "rather vague." (Tr. 26). While Dr. Swedberg's objective findings were "somewhat consistent" with records "that showed the claimant with relatively few physical deficits," the ALJ nevertheless discounted Dr. Swedberg's opinions and gave partial credit to Plaintiff's subjective reports of chronic pain, also considering "medication effects complicated by her nonsevere impairments such as obesity." (*Id.*)

14

Plaintiff now argues the ALJ reversibly erred by relying on Dr. Swedberg's opinions *at all*, because he did not evaluate the pattern of tender/trigger points used to diagnose fibromyalgia. (Doc. 7 at 6). But Dr. Swedberg's report includes explicit findings of *no tenderness to palpation on examination*, indicating a *lack* of tender/trigger points on the date of his exam. (See Tr. 839-840, finding "no evidence" of tenderness in the lumbar area, or on palpation to the hips, or over the knee joints, with "all sensory modalities…well-preserved including light touch and pinprick."). In any event, Dr. Swedberg's assessment of tender/trigger points was not a significant issue either in the ALJ's evaluation of his opinions (which again, the ALJ found only "somewhat persuasive") or in the ALJ's separate finding that Plaintiff's fibromyalgia is a severe impairment.

The third physical RFC opinion as to which Plaintiff claims error was rendered by treating physician, Lisa Rowley, M.D. Dr. Rowley offered work-preclusive opinions based in part on Ms. Spears' much earlier October 2019 FCE report.[9] (*See* Tr. 843-846). The ALJ accurately summarized her opinions as follows:

> Lisa Rowley, M.D., in February 2021 submitted a written statement in which she opined that the claimant's ability to carry on basic functions were still impacted and that she should be limited such that she can lift/carry 10 pounds occasionally and 5 pounds frequently; that she could stand/walk 2 hours in an 8-hour workday, sit for 6-7 hours in an 8-hour workday; that she has postural limitations such that she can occasionally stoop and kneel, but less than occasional climb, balance, crouch, crawl; and that she has deficits for seeing, hearing, reaching, handling, fingering, pushing/pulling due to her migraines as well as chronic stiffness in her hands and fingers (10F/5). Moreover, Dr. Rowley thought the claimant should be limited from

---

[9]Based on Dr. Rowley's reference to the FCE, Plaintiff cites to *Hargett v. Comm'r*, 964 F.3d 546, 554 (6th Cir. 2020), a case in which the Sixth Circuit held that an FCE that was co-signed by a claimant's treating physician was entitled to "controlling weight" as a treating source opinion. In *Hargett*, the court reversed because the ALJ failed to provide "good reasons" as required under then-applicable regulations for giving less than controlling weight to the treating source. But this case is governed by revised regulations that eliminate the long-standing treating physician rule at issue in *Hargett*, in favor of an entirely new standard for evaluating opinion evidence. In other words, *Hargett* is inapposite.

environmental situations including heights, moving machinery, chemicals, temperature extremes, vibration, noise, and fumes. Finally, Dr. Rowley opined that the claimant would miss 22 to 25 days of work per month due to her impairments; and that maintaining a position would require 2 to 3 days after to recover.

(Tr. 26).

The ALJ explicitly recognized the treatment relationship but rejected Dr. Rowley's opinions as "not entirely persuasive." (*Id*.) The ALJ reasoned that as a primary care physician, "her opinion seems rather extreme when compared to objective findings made by specialty clinicians including the claimant's rheumatologist and pain management." (*Id*.) For example, Plaintiff's pain management clinician "noted she was independent with her activities and her x-rays showed no acute findings," with records showing her "able to ambulate without assistance." (*Id*.) In addition, the longitudinal record showed the effectiveness of treatment including lidocaine patches and a new PT program established in September 2021. (*Id*.) The ALJ further wrote:

Based on the overall findings, Dr. Rowley's opinion seems rather extreme and not well supported. Moreover, her opinion is not well explained. For example, Dr. Rowley noted the claimant's migraines causing "dizziness and potentially fall" (10F/5). While the claimant's record regarding migraines does correlate dizziness (13F/64), … there were no fall accidents related to her migraines. Additionally, her migraines have been considered pursuant to SSR 19-4p and the records does not support any specific functioning limitations from her migraines/headaches. As such, the claimant's headaches/migraines are considered in light of their symptomatic impacts on the claimant's functioning as caused by other associated impairments.[10] Moreover, Dr. Rowley's opinion that the claimant would miss 22-25 days of work per month and that she would need 2-3 days to recover after maintaining positions for a period also seem extreme. The claimant does have interval medical appointments but nothing in the record suggests that

---

[10]Plaintiff testified that her migraines had occurred only "about once a month" over "the past couple of years," but added that "recently the past three months or so" her migraines had been increasing to as often as twice per week "sometimes." (Tr. 58). Based on record, the ALJ found the migraines to be nonsevere in part because the record "does not support any specific ongoing functioning limitations" from migraines. (Tr. 19). Plaintiff does not challenge that conclusion.

she would miss 22-25 days of work due to her impairments. In fact, her psychiatrist has indicated the claimant's manipulative presentation of symptoms as way of getting attention (6F/83). Dr. Rowley did not seem to consider this particular finding when rendering her opinion about the claimant's functional capacity. Consequently, Dr. Rowley's opinion is accorded very little consideration to the extent it is consistent and can be supported by the overall objective evidence.

(Tr. 27).

The ALJ's analysis is substantially supported by the cited evidence. Plaintiff seems to advocate for reversal on grounds that the ALJ should have better articulated whether she gave more credit to Dr. Swedberg's "somewhat persuasive" or Dr. Rowley's "not entirely persuasive" opinions. (*See* Doc. 7 at 6, PageID 1533). But the regulations do not require an ALJ to define the phrases she uses to describe persuasiveness so long as she has assessed the supportability and consistency factors, as the ALJ did here. And as the Commissioner points out, "a brief examination of the opinions and the RFC clearly shows that the ALJ found a restrictive RFC between Dr. Rowley's extreme limitations and Dr. Swedberg's vague limitations, with postural and environmental limitations less restrictive but similar to those opined by Dr. Rowley." (Doc. 10 at 13, PageID 1555). "The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010). Because the ALJ alone determines the RFC, it is not necessary for the RFC to represent the opinion of any specific physician. *See also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009).

### B. The Mental RFC Opinions

The Court finds equally unpersuasive Plaintiff's critique of the ALJ's analysis of two mental RFC opinions offered by Plaintiff's treating psychologist, Richard Rothenberg,

Psy.D., and by agency consultant, Richard Sexton, Ph.D. The ALJ gave "very little consideration" to the opinions of Dr. Rothenberg, but gave "partial consideration" to Dr. Sexton's opinions.

In February 2021, Dr. Rothenberg completed a mental RFC form supplied by counsel and endorsed "marked" limitations in nearly all functional work-related areas. (Tr. 847-849). He also opined that Plaintiff would miss 7-10 days of work per month due to psychological limitations. However, the ALJ rejected Dr. Rothenberg's opinions. In terms of supportability, the ALJ pointed out that many of Dr. Rothenberg's limitations were based on a diagnosis of autism, but that diagnosis was supported only by Plaintiff's self-report, not by objective evidence. (Tr. 27). Plaintiff points to nothing to contradict that point. In terms of consistency, the ALJ noted many records that contradict or undermine Dr. Rothenberg's opinions, including the effectiveness of lithium, and Plaintiff's reports that she was able to start writing a book, bake, spend time with family and friends, and is mostly independent with her living. (Tr. 27). Therefore, the ALJ concluded that Dr. Rothenberg's opinions were "not well explained" or "well supported by the overall record and not entirely consistent with the objective findings" in the record, including those made by Dr. Sexton. (*Id*.)

The ALJ remarked: "It is possible that Dr. Rothenberg is not familiar with our evidentiary standards for finding 'marked' limitations." (*Id*.) Plaintiff seizes on that remark because the check-box form that Dr. Rothenberg completed defines "marked" as being able to perform a function between 50% and 84% of the time. But consistent with the ALJ's comment, the form's broad definition varies significantly from the Agency's

definition of "marked." More importantly, the comment does not detract from the overall analysis of the consistency and supportability factors, which is substantially supported.

In contrast to the "very little" consideration given to Dr. Rothenberg's opinions, the ALJ gave "partial consideration" to the opinions of the agency consultant. Dr. Sexton opined that despite the existence of "[s]ome limitations in [Plaintiff's] capacity to conform to social expectations in a work setting… she was expected to respond appropriately to work-place pressures." (Tr. 831). Plaintiff briefly argues that Dr. Sexton's finding of "some" problems dealing with others is "consistent with" Dr. Rothenberg's finding of "marked" limitations. But the ALJ's interpretation of the two opinions as inconsistent was reasonable. And again, it is not the province of this Court to reweigh the opinion evidence. *See Whetsel v. Comm'r of Soc. Sec*., 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("it is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."); *Dyson v. Comm'r of Soc. Sec.*, 786 Fed. Appx. 586, 588 (6th Cir. 2019) ("[t]his [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.").

### 3. The ALJ Properly Assessed Plaintiff's Mental RFC and Social Interactions

Closely linked to her claims about the ALJ's evaluation of her subjective complaints and the opinion evidence is Plaintiff's separate challenge to the ALJ's assessment of her mental RFC. In oral hypothetical questions posed to the vocational expert, the ALJ included limitations that were *mostly* consistent with the mental RFC set forth in her written opinion. But Plaintiff argues that the ALJ's assessment of her mental RFC requires reversal for two reasons: (1) because a discrepancy exists between the oral hypothetical

and the ALJ's written decision; and (2) because Plaintiff has little to no ability to interact with others in the workplace.

The Court acknowledges the discrepancy between the mental limitations included in the oral hypothetical and the ALJ's written opinion. The ALJ's written decision concludes that Plaintiff retains the mental RFC to engage in "frequent" contact with others.

> The claimant testified to having low frustration and difficulty dealing with others especially with strangers. Her record reflects some instances of her difficulties regarding interaction generally, but she was also able to interact with her multiple clinicians on a consistent basis for treatment purposes. Consequently, the undersigned finds the claimant able to tolerate frequent interaction with the public, coworkers, and supervisors.

(Tr. 25; see also Tr. 22). But in the oral hypothetical posed to the VE, the ALJ phrased the limitation as only "occasional interaction with the public, coworkers, and supervisors." (Tr. 60). And near the end of her opinion, the ALJ reiterates and expressly relies on the VE's testimony that an individual who is limited to "occasional interaction" still could perform full-time work, including the three representative jobs on which the ALJ relied. (Tr. 28-29).

However, the discrepancy between the "occasional" verbiage used in the hypothetical to the VE and the "frequent" level included in the RFC finding represents harmless error because it is irrelevant to the non-disability determination. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (internal quotation marks and citation omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021); *see also, generally*, *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009).

20

Here, two possibilities explain the discrepancy: (1) the ALJ intended to find "frequent" interactions as written, and erred at the hearing when she failed to ask the VE a hypothetical that included "frequent interactions"; or (2) the finding of "frequent" interactions reflects a typographical error; the ALJ meant to type "occasional" interaction (consistent with both the hypothetical used at the hearing and the subsequent reference to "occasional" at the end of her written opinion). Neither possibility impacts the non-disability determination.

Consider the first option. Assuming that the ALJ intentionally determined that Plaintiff can engage in "frequent" interaction, that RFC finding necessarily <u>includes</u> the lesser level of "occasional" interaction.[11] In other words, remand would be pointless because the VE testified that a more socially limited individual still could perform the full-time jobs on which the ALJ relied. *Accord Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-188-ALM-SKB, 2024 WL 689322, at *4 (S.D. Ohio, Feb. 20, 2024) (finding harmless error because "the ALJ elicited unrebutted testimony from a vocational expert that an individual with Plaintiff's RFC who also had a more restrictive social interaction limitation could still perform full-time work.").

The same result obtains when considering the second possibility: that the reference to "frequent" reflects a typographical error, and the ALJ intended to type "occasional" as she did at the end of her opinion. In that case, the VE's testimony still supports the outcome. Courts do not remand for errors that result in no prejudice. *See*

---

[11]It is worth pointing out here that Dr. Rothenberg opined (using the form's definition) that Plaintiff remains capable of relating to co-workers, interacting with supervisors, and dealing with work stresses *up to 84% of the workday*. (Tr. 847). That level of interaction greatly exceeds both "occasional" interactions (one third of the workday) and "frequent" interactions (two-thirds of the workday).

*also Deaton v. Astrue,* 1:10-cv-461-SAS, 2011 WL 4064028 *5 (S.D. Ohio, Sept.13, 2011) (discrepancy between ALJ's RFC in written opinion and RFC posed to vocational expert at hearing was harmless error, where accurate hypothetical at hearing and oral testimony of VE provided substantial evidence to support non-disability finding).

In another argument concerning social interaction limitations, Plaintiff suggests that she cannot engage in *any level* of social interactions. In this respect, she mostly argues that the ALJ should have fully credited her subjective complaints or accepted her treating psychiatrist's mental RFC opinions – both propositions the Court has rejected. But Plaintiff also complains that the ALJ failed to consider how fatigue from fibromyalgia contributes to her depression.[12] (Doc. 7, PageID 1532). She asserts broadly that her fibromyalgia causes "many more work-related limitations than frequent contact with co-workers and supervisors and no fast pace work," (Doc. 7, PageID 1533). But her failure to identify *any specific* limitation other than those endorsed by Dr. Rothenberg dooms that assertion. In any event, the ALJ specifically discussed the evidence that Plaintiff's pain from fibromyalgia and EDS aggravate her mental impairments, (Tr. 22; *see also* Tr. 25, discussing "chronic fatigue and multiple joint pain."). The ALJ even discussed the single record cited by Plaintiff here, dated April 26, 2021, which reflects Dr. Rowley's hypothesis that Plaintiff's depression might be causing her then-acute "worsening of fibromyalgia" symptoms. (Tr. 23, citing Tr. 861).

---

[12]Plaintiff does not challenge the ALJ's Step 3 finding that Plaintiff does not suffer from "severe fatigue." (Tr. 19).

In her reply memorandum, Plaintiff adds a new argument that the ALJ's finding of "moderate" limitation in interacting with others at Step 3 of the sequential analysis[13] "is consistent with" an inability to interact with others on a sustained basis. (Doc. 11). It is not. *See Tracy F. v. Comm'r*, No. 2:23-cv-188, 2023 WL 8614065, at *9 (S.D. Ohio, Dec. 13, 2023) (concluding that "moderate" limitations were consistent with limitation to "frequent" interactions), R&R adopted at 2024 WL 689322 (S.D. Ohio, Feb. 20, 2024). More to the point, this Court must affirm so long as substantial evidence supports the RFC as determined. The ALJ here stated that only a limitation that is "extreme" (defined as "the inability to function independently, appropriately, or effectively, and on a sustained basis") or "marked" (defined as "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis") would be consistent with the type of work-preclusive limitation in interacting with others that Plaintiff alleges. (Tr. 19). By contrast, the ALJ's finding of only "moderate" limitations is consistent with either "occasional" or "frequent" interactions with others in the workplace. *See Tracy F.*, *supra* at *9.  In short, Plaintiff's claim that she has little or no ability to work based on social interaction limitations is not supported either by the record or by case law. By contrast, substantial evidence in the record exists to support either the ALJ's written finding of "frequent" interaction, or the more restrictive "occasional" interaction limitation included in the hypothetical posed to the VE.

---

[13](*See* Tr. 20, evaluating "Paragraph B" criteria to determine whether any of Plaintiff's mental impairments met or equaled Listings 12.04, 12.06, or 12.11).

**4. The ALJ Properly Relied on Vocational Expert Testimony**

Plaintiff's fourth claim of error is a compilation of her first three. She maintains that reversal is required based on the ALJ's failure to include additional physical and mental limitations in the written RFC, or in the hypothetical posed to the VE. But if the hypothetical RFC formulated by an ALJ is supported by the record, as here, then a vocational expert's testimony that an individual can engage in a substantial number of jobs will constitute substantial evidence to support the non-disability determination. *Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

**III.  Conclusion and Order**

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge